# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

UNITED STATES OF AMERICA,
etc.,

      Plaintiff,

v.                                    CASE NO. 4:02cv389-RH/WCS

CAPITAL GROUP HEALTH SERVICES
OF FLORIDA, INC., etc., et al.,

      Defendants.

_____/

## ORDER DISMISSING FIRST AMENDED COMPLAINT IN PART

      This is a qui tam action alleging that a hospital, health maintenance organization, and psychiatrist entered into a scheme for submission of false claims to the state and federal governments for services allegedly provided to medicare and medicaid beneficiaries. Defendants have moved to dismiss. I dismiss the action as against the health maintenance organization for failure to allege with adequate specificity that it participated in any fraud. I dismiss the action as against the hospital on two grounds: first, with respect to claims for hospital services, for failure to allege fraud with adequate specificity; and second, with respect to claims for services provided by physicians employed by the hospital, for failure to allege

adequately a basis for the relator's asserted knowledge.  I deny the motion to dismiss the claims against the psychiatrist.  I also establish a schedule that will allow early resolution of the psychiatrist's assertion that the relator's allegations against him are based wholly on conjecture, not knowledge of a kind sufficient to support a qui tam action.

**I**

The relator, Dominica Brodsky, filed this action under the False Claims Act, 31 U.S.C. §3729 et seq., and its Florida counterpart, §68.082, *Florida Statutes*.  After repeated extensions of its 180-day deadline, the government elected not to intervene.  Ms. Brodsky effected service of process, and defendants moved to dismiss for failure to allege fraud with the specificity required by Federal Rule of Civil Procedure 9(b).  I granted the motion but afforded Ms. Brodsky leave to amend.  Ms. Brodsky filed her first amended complaint, and defendants again moved to dismiss.

In the amended complaint, Ms. Brodsky alleges that defendants entered a conspiracy under which false claims were submitted to the state and federal governments for services allegedly provided to medicare and medicaid beneficiaries.  While the amended complaint is not a model of clarity, it appears to allege false claims that may be divided into four categories:  first, claims by the

defendant psychiatrist, Dr. Faisal Munasifi,[1] for psychiatric services that either were not rendered at all ("phantom claims") or that were exaggerated for billing purposes ("upcoded claims");[2] second, claims by Dr. Munasifi that were false because he represented that he had complied with applicable statutes when in fact he violated the "anti-kickback" statute by compensating the defendant health maintenance organization, Capital Group Health Services of Florida, Inc. d/b/a Capital Health Plan ("CHP"), for referring the patients; third, claims for services rendered by psychiatrists employed by the defendant hospital, Tallahassee Memorial Healthcare, Inc. ("TMH"), for which the compliance representations were false because TMH compensated CHP and Dr. Munasifi for referring the patients, thus violating the anti-kickback statute; and fourth, claims by TMH for hospital services for which the compliance representations were false both because

---

[1] The amended complaint also names as a defendant Psych. Management Services, Inc., a corporation that Dr. Munasifi allegedly owned and controlled. The amended complaint apparently asserts the same claims against Psych. Management as against Dr. Munasifi. For convenience, this order refers to "Dr. Munasifi" to mean both Dr. Munasifi and Psych. Management; the same analysis applies both to the individual and to his corporation.

[2] Medicare and medicaid payments to a physician are based on the services provided. The services are categorized by "current procedural terminology" or "CPT" codes. For psychiatric consultations (as well as various other types of service), time is a factor; longer consultations (for example, in the range of 45 to 50 minutes, for one code) yield higher payments than shorter consultations (for example, in the range of 20 to 30 minutes, for a lower code). Ms. Brodsky alleges that Dr. Munasifi routinely submitted claims for longer consultations than he performed, that is, that he "upcoded" his claims.

TMH compensated CHP and Dr. Munasifi, thus violating the anti-kickback statute, and because TMH maintained a "financial relationship" with Dr. Munasifi, thus violating the "self-referral" statute.

Attached to the amended complaint are lists identifying specific transactions in the first three of these categories. Thus, for example, exhibit 6 to the amended complaint lists the precise date on which Dr. Munasifi submitted a bill for a specific procedure that either was not in fact performed or for which the bill was exaggerated.

Ms. Brodsky alleges she knows of these false representations because she worked as a mental health counselor at TMH in "the early 1990s," Amended Compl. ¶19, and "later" worked in an office building where Dr. Munasifi and the TMH-employed psychiatrists maintained their offices. There, Ms. Brodsky says, she became aware of Dr. Munasifi's hours and related patterns of work. Ms. Brodsky says she also observed documents supporting her allegations in a common area of the building used by support staff to stage documents until a decision was made regarding their destruction or other disposition. Amended Compl. ¶20; *see also id.* ¶89. Finally, Ms. Brodsky also identifies as a source of some of her information a response by TMH to a discovery request in a different lawsuit. *See*

*id.* at 30 n.1.[3]

## II

The Eleventh Circuit affirmed dismissal of a qui tam action similar to the case at bar in *United States ex rel. Clausen v. Laboratory Corp. of America*, 290 F.3d 1301 (11th Cir. 2002). The court's holding was that Rule 9(b) applies to qui tam actions and that the complaint there was not sufficiently specific, in part because it:

> "d[id] not identify any specific claims that were submitted to the United States or identify the dates on which those claims were presented to the government" and "relie[d] exclusively on conclusory allegations of fraudulent billing."

*Clausen*, 290 F.3d at 1311 (quoting district court opinion dismissing complaint and stating, "We agree with these conclusions."). The court also said:

> The particularity rule serves an important purpose in fraud actions by alerting defendants to the precise misconduct with which they are charged and protecting defendants against spurious charges of immoral and fraudulent behavior. The application of Rule 9(b), however, must not abrogate the concept of notice pleading. Rule 9(b)

---

[3] The discovery response cited by Ms. Brodsky was made after the filing of the case at bar but while the government was deciding whether to intervene. At that time, this action remained under seal, TMH had not been served, and no discovery had been undertaken. The discovery response thus was not made in this lawsuit.

> is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequences of the fraud.

*Clausen*, 290 F.3d at 1310, *quoting Zemba v. Cascade Int'l, Inc.*, 256 F.3d 1194, 1202 (11th Cir. 2001). Finally, the court said that speculation about what likely happened is not enough; instead,

> if Rule 9(b) is to be adhered to, *some indicia of reliability must be given in the complaint* to support the allegation of an actual false claim for payment being made to the Government.

*Clausen*, 290 F.3d at 1311 (emphasis added).

These standards, and the guidance derived from the manner in which they were applied in *Clausen*, provide the starting point for the analysis in the case at bar. I address in turn each of the four categories of claims at issue.

## A

The first category of allegedly false claims at issue consists of "phantom" and "upcoded" claims by Dr. Munasifi. The amended complaint alleges that in some instances Dr. Munasifi submitted medicare and medicaid bills for services he

simply did not perform. The amended complaint alleges that in other instances, Dr. Munasifi billed the higher rate payable for longer psychiatric consultations than he actually performed. Billing for these phantom or upcoded services in this manner obviously is fraudulent. Dr. Munasifi does not contend otherwise.

Dr. Munasifi says, however, that the amended complaint does not allege this type of fraud with sufficient particularity. I disagree. The amended complaint alleges, for example, that Dr. Munasifi billed a specific amount ($247.30) for a specific procedure ("[p]rolonged physician services with direct (face-to-face) patient contact in inpatient setting") on a specific date (February 21, 2000), and that he did not in fact perform that procedure as claimed. *See* Amended Compl., ex. 6, at page 1, entry 5. This is specificity enough.

To be sure, the amended complaint does not include this patient's name. But the reference is obviously to a specific patient whose name, if not already known to Ms. Brodsky or Dr. Munasifi, presumably will be subject to easy determination. And gratuitously including the name of a psychiatric patient in a publicly available complaint would be inappropriate. In light of the other specific information provided for this transaction, the absence of the name does not violate Rule 9(b).

The only other specificity lacking is whether Dr. Munasifi saw the patient on this date at all, that is, whether this was a phantom claim or merely an upcoded claim. This is, at bottom, a difference not of kind but of degree; the question is, in

effect, whether Dr. Munasifi defrauded the payer out of the whole $247.30, or just part of it. Nothing in *Clausen* suggests this level of detail is required.

Finally, the amended complaint provides at least "some indicia of reliability" to support this claim. Ms. Brodsky says she has personal knowledge of the length of Dr. Munasifi's workday from having worked in the same building with him, and she says she heard him brag about not working beyond 5:00 in the afternoon. Ms. Brodsky gives precise figures, apparently based on available documentation, that on specific dates he submitted claims for more hours than he ever actually worked. This is hardly conclusive proof, but it is enough to survive a motion to dismiss.

It is true, of course, that even with this level of specificity and this explanation of Ms. Brodsky's knowledge, these allegations are not much different from those in *Clausen*. They are, however, at least somewhat different; there is a degree of specificity here that in *Clausen* was lacking. My conclusion is that *Clausen* is the high water mark for the specificity requirement for qui tam complaints of this type, and that the decision ought not be extended further to the somewhat different circumstances of the case at bar.

**B**

The next category of allegedly false claims at issue consists of all claims by Dr. Munasifi for services rendered to members of the defendant health maintenance organization, CHP. The amended complaint alleges that these claims were accompanied by false representations of compliance with the so-called "anti-kickback" provision, that is, the statutory prohibition on paying or soliciting any "remuneration" in exchange for the referral of medicare or medicaid patients. *See* 42 U.S.C. §1320a-7b(b)(1) & (2).[4] The amended complaint alleges that Dr. Munasifi compensated CHP for referring patients to him.

The only manner in which the amended complaint alleges that Dr. Munasifi compensated CHP, however, is by reducing the costs CHP incurred for treatment of its members. The amended complaint says Dr. Munasifi did this by hospitalizing fewer patients. The amended complaint hints that this was inappropriate, that is, that more patients should and would have been hospitalized, but for Dr. Munasifi's nefarious scheme to profit CHP.

This is not, however, "remuneration" of a type prohibited by the anti-

---

[4] The statute makes it a felony knowingly and willfully to solicit, receive, or offer to pay "any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind," in exchange for referring a person for "any item or service for which payment may be made in whole or in part under a Federal health care program." 42 U.S.C. §1320a-7b(b)(1) & (2).

kickback provision. To the contrary, a health maintenance organization properly can and indeed should strive to reduce excessive utilization of medical services. An HMO may contract with physicians it believes will contribute to that goal. The key, of course, is to cut *excessive* services while continuing to provide *appropriate* ones. If an HMO or one of its contracted physicians goes too far, there are available remedies—but one of them is *not* a qui tam action asserting that by limiting services, the physician somehow paid the HMO an illegal kickback.

In any event, Ms. Brodsky does not allege with particularity any basis for believing that Dr. Munasifi "remunerated" CHP in this manner. She apparently asserts CHP members were hospitalized for psychiatric treatment less often than other patients. But she gives no specifics. She has identified not a single occasion when a patient was not hospitalized but should have been. She alleges no particularized basis for believing the lower hospitalization rate for CHP patients—if indeed there was one—meant CHP patients were underutilizing hospital services, rather than that other patients were over-utilizing them. The assertion that Dr. Munasifi committed fraud by representing that he had complied with anti-kickback requirements, despite having "remunerated" CHP in this manner, is precisely the kind of generalized, unsupported allegation that Rule 9(b) targets. To the extent based on this theory, the amended complaint will be dismissed.

## C

The third category of allegedly false claims consists of claims for services rendered by the psychiatrists employed by TMH.  The amended complaint alleges that these claims, like those in the second category, were accompanied by false representations of compliance with the governing statutes.  The amended complaint alleges the compliance representations were false in two respects.

First, the amended complaint alleges that TMH compensated CHP for referring these patients, thus violating the anti-kickback provision.  The manner in which TMH allegedly compensated CHP was by joining the conspiracy under which fewer CHP members were hospitalized.  In essence, this is an allegation that TMH compensated CHP by not charging CHP for hospital services that TMH did not provide.  This is not "remuneration" within the meaning of the anti-kickback statute.  Nor, in any event, does the amended complaint allege with sufficient particularity the facts purportedly rendering TMH's claims fraudulent in this respect.

Second, the amended complaint alleges TMH compensated Dr. Munasifi for referring patients to the TMH-employed psychiatrists.  The allegation is that the compensation took two forms:  payment of consulting fees for work that Dr. Munasifi did not in fact perform; and payment of above-market rent for space that

Dr. Munasifi owned and in turn leased to TMH for the offices occupied by the TMH-employed psychiatrists. The amended complaint alleges that the consulting fees and rent were compensation for Dr. Munasifi's referral of these patients to the TMH-employed psychiatrists, thus violating the anti-kickback provisions.[5] I conclude that this is an adequate allegation of fraud.[6]

What is lacking, however, is any allegation of a basis for Ms. Brodsky's knowledge. She says she worked at TMH in the early 1990s, later worked in the building where Dr. Munasifi and the TMH-employed physicians had offices, and saw papers in a staging area in that building. None of that explains how she could

---

[5] The amended complaint also alleges that, because of these payments, these referrals violated the self-referral statute, 42 U.S.C. §1395nn, as discussed in section II-D below. In response to the motions to dismiss, however, Ms. Brodsky has acknowledged that the self-referral provision does not apply to referrals of this type. *See* 42 U.S.C. §1395nn(h)(6) (defining "designated health services" covered by the self-referral law not to include physician office visits). Ms. Brodsky now says, though, that the TMH-employed physicians also provided ancillary services, such as blood work, for at least some of the referred patients, and that, to this extent, the referrals violated the self-referral statute. But identifying a broad class of claims, and saying that some unspecified transactions within the group must have been fraudulent because of violations of the self-referral provision, falls far short of the specificity required by Rule 9(b). For present purposes, however, this does not matter; the ruling on the motion to dismiss would be the same whether the transactions were alleged to violate both the anti-kickback and self-referral statutes, or just the anti-kickback provisions.

[6] Exhibits to the amended complaint provide the same detail for the transactions at issue in this section as was provided for the transactions at issue in section II-A above. For the reasons set forth there, I conclude that this is sufficient particularity to comport with Rule 9(b).

know Dr. Munasifi was paid a consulting fee he did not earn or that he charged above-market rent.  Ms. Brodsky makes no claim to have seen particular documents or heard conversations supporting these allegations.  And although Ms. Brodsky cites discovery responses in a different lawsuit, she makes no allegation that those responses support the assertion that Dr. Munasifi charged for consulting services he did not perform or charged above-market rent.[7]

In short, if, as the Eleventh Circuit has said, "some indicia of reliability must be given in the complaint," *Clausen*, 290 F.3d at 1311, then Ms. Brodsky's amended complaint is deficient.  I conclude that to the extent directed to this category of false claims, the amended complaint must be dismissed.

**D**

The final category of allegedly false claims consists of claims by TMH for hospital services.  The amended complaint asserts that these claims were false because TMH represented it had complied with the governing statutes, when in fact it compensated CHP and Dr. Munasifi for referring the patients, thus violating

---

[7] In addition, it is unclear whether the discovery responses would provide a basis for this action even if they included a factual basis for the allegations at issue (which they apparently did not).  *See* 31 U.S.C. §3730(e)(4)(A) (barring qui tam action "based upon the public disclosure of allegations or transactions in a criminal, civil, or administrative hearing . . . unless the action is brought by the Attorney General *or the person bringing the action is an original source of the information*") (emphasis added).

the anti-kickback statute, and TMH maintained a "financial relationship" with Dr. Munasifi, in violation of the self-referral statute.

For the reasons discussed is section II-C above, the amended complaint adequately alleges that TMH compensated Dr. Munasifi for referring patients, both by paying consulting fees that were not earned and by paying above-market rent.

The amended complaint also adequately alleges a violation of the self-referral statute, under which a physician may not refer a patient to an entity (including a hospital) with which the physician has a "financial relationship." *See* 42 U.S.C. §1395nn. The statute defines a "financial relationship" to include, among other things, above-market consulting fees or rental payments that are either above-market or unsupported by a written lease. *See* 42 U.S.C. §1395nn(a)(2) (defining "financial relationship" to include a "compensation arrangement" as defined in subsection (h)(1)); 42 U.S.C. §1395nn(h)(1)(A) (defining "compensation arrangement" to include any arrangement involving "remuneration"); 42 U.S.C. §1395nn(h)(1)(B) (defining "remuneration" to include "any remuneration, directly or indirectly, in cash or in kind"); 42 U.S.C. §1395nn(e)(3)(A)(v) (providing exception for fees paid to physicians for services rendered, subject to specified conditions, including that fees not exceed fair market value of services); 42 U.S.C. §1395nn(e)(1)(A) (providing exception for lease payments, subject to specified conditions, including that lease is in writing and rent

is consistent with fair market value). The amended complaint alleges that the consulting fees paid to Dr. Munasifi exceeded fair market value (services not in fact rendered obviously have no market value), that the office rent exceeded fair market value, and that Dr. Munasifi and TMH did not have a written lease covering all of the space occupied by the TMH-employed psychiatrists.

The amended complaint nonetheless fails to allege fraud with respect to these claims with sufficient particularity. For claims in this category, the amended complaint sets forth no specifics at all—not, for example, the date, amount, or basis of a single claim. The amended complaint thus provides, for this category of claims, much less information than was provided in *Clausen*. To the extent based on this category of claims, therefore, the amended complaint must be dismissed.[8]

### III

The result of these rulings is that the amended complaint survives only with respect to Dr. Munasifi's phantom or upcoded claims. Although the amended complaint alleges a conspiracy among TMH, CHP, and Dr. Munasifi, it does not allege with the specificity required by Rule 9(b) any basis for the assertion that

---

[8] Dismissal is appropriate for another reason as well. For the reasons discussed in section II-C above, the amended complaint fails to allege an adequate basis for Ms. Brodsky's knowledge that Dr. Munasifi charged for consulting services he did not provide, charged above-market rent, or had no written lease covering the space at issue.

TMH and CHP participated in, approved, or even knew about the phantom or upcoded claims. To the extent the amended complaint attempts to state claims against TMH and CHP with respect to the phantom and upcoded claims, the amended complaint falls short.[9]

### IV

In upholding the amended complaint's allegations regarding phantom and upcoded claims, I have not overlooked the considerable skepticism manifested in the Eleventh Circuit's opinion in *Clausen*—as well as in the motions to dismiss in the case at bar—that a person in the relator's position could really know the facts

---

[9] The basis of the ruling in this section is the failure to allege with particularity a factual basis for holding TMH or CHP responsible for these claims. As an aside, it bears noting that the allegation that CHP participated in—or even acquiesced in or knew about—the phantom and upcoded claims seems unlikely: why would an HMO want a physician to charge the HMO for services he did not provide? Ms. Brodsky's theory apparently is that this entire three-sided operation was such a good arrangement for all concerned that they cooperated for their mutual benefit. This comes close to, if indeed it is not, the kind of allegation found lacking in *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 595, 106 S. Ct. 1348, 1360, 89 L. Ed. 2d 538 (1986) (holding summary judgment appropriate where, "as presumably rational businesses, petitioners had every incentive *not* to engage in the conduct with which they are charged, for its likely effect would be to generate losses for petitioners with no corresponding gains"); *see also id.* at 596-97, 106 S. Ct. at 1361 (commenting on the "permissible conclusions" that courts may draw from evidence at summary judgment stage and holding, "if petitioners had no rational economic motive to conspire, and if their conduct is consistent with other, equally plausible explanations, the conduct does not give rise to an inference of conspiracy").

*Case No: 4:02cv389-RH/WCS*

that have been alleged.  Indeed, the dissent in *Clausen* suggested this might really have been what motivated the decision.  And this concern ought not be taken lightly.  As I said in dismissing the original complaint in the case at bar:

> Although Rule 9(b) draws no distinction between qui tam actions and individual fraud claims, the application of the rule in qui tam actions serves an important purpose:  it prevents relators from filing suit based on a mere hunch and using discovery in the hope of finding support for the claim.  As the Eleventh Circuit said in *Clausen*, "we cannot be left wondering whether a plaintiff has offered mere conjecture." *Clausen*, 290 F.3d at 1313.

Order of December 28, 2004 (document 50) at 4.  As set forth in section II-A above, however, I conclude that Ms. Brodsky has adequately alleged the basis of her knowledge, and that the level of specificity she has provided is sufficient, at least at the pleading stage, to overcome the concern that this is "mere conjecture."

Even so, I also conclude, as a matter of discretion, that Ms. Brodsky ought not be given a free pass to unlimited discovery.  As the Supreme Court has said, "federal courts and litigants must rely on summary judgment and control of discovery to weed out unmeritorious claims sooner rather than later." *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168-69, 113 S. Ct. 1160, 122 L.Ed.2d 517 (1993).  If, as Ms. Brodsky has alleged, she has information sufficient to allow the maintenance of this qui tam action, she should be able to discover her case fully.  But if she does not, this action should

come to a swift end.  A schedule thus will be established under which Dr. Munasifi may depose Ms. Brodsky and promptly seek summary judgment if warranted, prior to the commencement of full discovery.[10]

For these reasons,

IT IS ORDERED:

1. The motions to dismiss of defendants Capital Group Health Services of Florida, Inc. d/b/a Capital Health Plan (document 71) and Tallahassee Memorial Healthcare, Inc. (document 75) are GRANTED.  All claims against these defendants are dismissed with prejudice.

2.  The motion to dismiss of defendants Dr. Faisal Munasifi and Psych. Management Services, Inc. (document 73) is GRANTED IN PART and DENIED IN PART.  The motion is denied with respect to claims arising from phantom or upcoded claims and is granted in all other respects.  These defendants shall file answers by June 22, 2005, but need not respond to paragraphs of the amended complaint not related to phantom or upcoded claims.

3. I do *not* direct the entry of judgment under Federal Rule of Civil Procedure 54(b).

---

[10] The parties have submitted their joint scheduling report.  Issuance of a scheduling order responding to that report has been delayed pending entry of this order.  A scheduling order will no be entered incorporating the provisions set forth in the text.

4.  The previously entered stay of discovery is vacated in part.  Defendants may depose and propound other discovery requests to the relator commencing immediately.  The defendants may conduct other discovery and the relator may conduct discovery commencing on (a) July 15, 2005, if defendants have filed no motion for summary judgment by that date; or (b) 21 days after the relator files her response to any motion for summary judgment filed on or before July 15, 2005; or (c) any earlier date if leave is granted on motion showing good cause.

SO ORDERED this 7th day of June, 2005.

s/Robert L. Hinkle<br>
Chief United States District Judge